UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| JORGE ROSADO-SIERRA, | ) | CASE NO. 4:06 CV 2925 |
| | ) | |
| Petitioner, | ) | JUDGE JAMES S. GWIN |
| | ) | |
| v. | ) | |
| | ) | MEMORANDUM OF OPINION |
| | ) | AND ORDER |
| BUREAU OF PRISONS, et al., | ) | |
| | ) | |
| Respondent. | ) | |

On December 6, 2006, pro se petitioner Jorge Rosado-Sierra filed a petition in this court for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. Mr. Rosado-Sierra filed the petition against the Bureau of Prisons (BOP) and T.R. Sniezak, the warden at F.C.I. Elkton in Elkton, Ohio where petitioner is currently incarcerated. He maintains, inter alia, that he was improperly ordered to clean the visiting room at the Metropolitan Detention Center (MDC) Guaynabo in San Juan, Puerto Rico because he was a pretrial detainee and, thus, the area was "not part or parcel of his living area as defined by . . . [BOP] Policy." (Pet. at 4.) He seeks an order from this court expunging the Incident Report issued, as well as the sanctions imposed by the BOP.

*Background*

Mr. Rosado-Sierra claims he was being held at MDC Guaynabo under a Detention Order issued pursuant to 18 U.S.C. § 3142. On May 22, 2005, the staff issued a directive to clean the visiting room at the MDC. Although he contends that he did not hear the order, the staff asserted that petitioner and several other inmates blatantly refused to comply with the directive. As a result, an Incident Report was prepared charging petitioner with engaging in and encouraging a group demonstration to refuse to clean the waiting room.

After the Incident Report was completed on May 31, 2005, Mr. Rosado-Sierra was placed in segregation and presented with a copy of the report. It was petitioner's defense that he did not hear the order and did not encourage others present to disregard it. Moreover, he claimed that the officers could not assert that everyone refused to clean because he was cleaning his table when Lt. Figueroa reentered the visiting room.

A Disciplinary Hearing was scheduled for July 29, 2005. Mr. Rosado-Sierra initially requested the assistance of a staff member, but after that staff member refused petitioner declined an alternate representative and proceeded with the hearing pro se. He reiterated his initial defense and added that staff failed to comply with BOP policy because the incident was unnecessarily "investigated by the SIS," he was not notified he was under investigation, he was not interviewed during the investigation, he was not provided a copy of the incident report within 24 hours and the Unit Disciplinary Committee did not schedule a timely hearing.[1]

---

[1] Although Mr. Rosado-Sierra claims he requested witnesses on his behalf for the Disciplinary Hearing, the Incident Report shows that none were requested. On page 5 of the Incident Report, the DHO statement to petitioner indicates, "you did not want to call witnesses. You understood your due process rights and were ready to proceed with the DHO hearing."

In addition to the Incident Report and investigation, the Disciplinary Hearing Officer (DHO) relied on Memoranda submitted by Captain Michael Smithing on May 31, 2005, Lt. J. Rodriguez on May 22, 2005, Lt. M. Figueroa on May 23, 2005, S.O. D. Rodriguez on May 22, 2005 and S.O. J. Diaz on May 22, 2005 before reaching a determination. The memoranda consistently indicated that all inmates who were present in the waiting room on May 22, 2005 refused orders from the OIC and Lt. Rodriguez to clean the Visiting Room. Furthermore, all the officers heard one inmate shouting in Spanish, "no one clean, sit down."

The DHO found that on the date of the incident, reporting officer Velez, stated that he ordered all 52 inmates present in the Visiting Room to clean the room, a standard procedure. Officer Velez alleged that all of the inmates chose instead to sit down and refused to comply with his order. In response, he called for back up and Lieutenants Figueroa and Rodriguez came to his assistance. After Officer Velez repeated the order to clean the area, he claims all of the inmates, including Mr. Rosado-Sierra, continued to defy him. Only after an emergency assistance call was made did the group begin to comply with the order. The BOP's account of the facts is supported by the eyewitness statements of all of the officers present.

Ultimately, the DHO determined that petitioner participated in a group demonstration on May 22, 2005 at approximately 3:15 pm.[2] Mr. Rosado-Sierra was found guilty of engaging in or encouraging a group demonstration. He was sanctioned with the loss of visitations from June 2, 2005 through November 28, 2005.

Mr. Rosado-Sierra appealed the DHO's decision. In the final response to his

---

[2] The charge of violating Code 299, Conduct Disruptive to the Security and Orderly Running of the Institution, was expunged by the DHO.

3

appeal, Administrator of National Inmate Appeals Harrell Watts determined that the evidence the DHO relied upon to support his finding was sufficient and that the finding was reasonable. Mr. Watts added that "the greater weight of the evidence supports the decision, and the sanctions imposed were appropriate for the offense." (Letter of 12/1/05 from Watts to Rosado-Sierra.)

*Analysis*

Mr. Rosado-Sierra contends that (1) he was denied "even rudimentary due process" because the Hearing Officer refused to disclose confidential informants and their documented reliability; (2) because he was a pretrial detainee he could not be "ordered or forced" to clean the visiting room since it was not part of his living area; (3) he was denied the opportunity to cross examine the authors of the memoranda upon which the DHO relied; and (4) the Incident Report "was barred from further consideration based upon flagrant violations of the time restrictions, which operate under the 'time is of the essence' standard, which denied Petitioner due process." (Pet. at 5.)

*Standard of Review*

"A court, justice or judge entertaining an application for a writ of habeas corpus shall forthwith award the writ or issue an order directing the respondent to show cause why the writ should not be granted, unless it appears from the application that the applicant or person detained is not entitled thereto." 28 U.S.C. § 2243. For the reasons set forth below, petitioner is not entitled to an award of the writ for which he applying.

*28 U.S.C. § 2241*

A writ of habeas corpus "shall not extend to a prisoner unless . . . [h]e is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. §

4

2241(c)(3). Moreover, courts have directed that claims asserted by federal prisoners seeking to challenge the execution or manner in which the sentence is served shall be filed in the court having jurisdiction over the prisoner's custodian under 28 U.S.C. § 2241. Capaldi v. Pontesso, 135 F.3d 1122, 1123 (6th Cir. 1998)(citing United States v. Jalili, 925 F.2d 889, 893 (6th Cir. 1991)); Wright v. United States Bd. of Parole, 557 F.2d 74, 77 (6th Cir.1977). These opinions reflect the underlying principle "that [it is] the likelihood of the effect on the overall length of the prisoner's sentence ... [that] determines the availability of habeas corpus." Ramirez v. Galaza, 334 F.3d 850, 858 (9th Cir.2003), cert. denied, 541 U.S. 1063 (2004).

In the present case, Mr. Rosado-Sierra seeks an order from this court expunging the disciplinary report from his record. In similar cases, the First, Second, Seventh, and Ninth Circuit Courts of Appeal have held that habeas relief is available even if the prisoner is not seeking immediate release. See, e.g., Bostic v. Carlson, 884 F.2d 1267, 1269 (9th Cir. 1989) (holding that habeas review is available in suits seeking "release not from prison but just from a more to a less confining form of incarceration" as well as in suits seeking relief likely "to accelerate ...release from prison"); Del Raine v. Carlson, 826 F.2d 698, 702 (7th Cir. 1987)(same); Brennan v. Cunningham, 813 F.2d 1, 4-5 (1st Cir. 1987) (same); Boudin v. Thomas, 732 F.2d 1107, 1111-12 (2d Cir. 1984)(holding an action seeking transfer from a more to a less restrictive prison environment properly cognizable under habeas, not Bivens). The question in Bostic, as with the present case, is whether expungement is likely to accelerate the prisoner's eligibility for parole. Both the Seventh and Ninth Circuits have held that habeas corpus jurisdiction does exist under these circumstances.[3] Bostic, 884 F.2d at 1269; McCollum v. Miller, 695 F.2d 1044, 1047

---

[3]As further support, the relevant Code of Federal Regulations provides:

(continued...)

5

(7th Cir.1982)(where likely, though not certain, that getting disciplinary finding expunged will accelerate prisoner's eligibility for parole . . . case may be closer to cases which hold that habeas corpus is appropriate remedy). Although petitioner has not asserted any residual effect as a result of the DHO's report, it is more likely than not that his claims sound in habeas and the court will proceed with its review accordingly.

A district court shall direct a writ of habeas corpus "to the person having custody of the person detained." 28 U.S.C. § 2243; see Braden v. 30th Judicial Circuit Ct. of Ky., 410 U.S. 484, 494-95 (1973) ("The writ of habeas corpus does not act upon the prisoner who seeks relief, but upon the person who holds him in what is alleged to be unlawful custody.") Therefore, a court has jurisdiction over a habeas corpus petition only if it has personal jurisdiction over the petitioner's custodian. Braden, 410 U.S. at 495 ; see 28 U.S.C. § 2242 (provides in pertinent part that "application for a writ of habeas corpus shall ... allege ... the name of the person who has custody over [the petitioner] and by virtue of what claim or authority....") The rationale for naming as respondent the person actually holding the petitioner in custody is undisputed. See e.g., Reimnitz v. State's Attorney, 761 F.2d 405, 408 (7th Cir.1985) (custodian is proper respondent "since habeas corpus challenges the lawfulness of the petitioner's custody, ... [the proper

---

³(...continued)

> [G]uidelines shall apply to the sanctioning of disciplinary infractions . . . during any period of confinement that is credited to his current sentence (<u>whether before or after sentence is imposed</u>), but prior to his release on parole; and by a parole violator during any period of confinement prior to or following the revocation of his parole (except when such period of confinement has resulted from initial parole to a detainer).

28 C.F.R. § 2.36(a)(2007)(emphasis added).

6

respondent] shall be the person who has that custody"); Dunbar v. Cranor, 202 F.2d 949, 950 (9th Cir.1953) ("The person having the physical custody of the prisoner, who is capable of bringing him into court, is the only person who may properly be named respondent in a petition for habeas corpus."); United States ex rel. Goodman v. Roberts, 152 F.2d 841, 842 (2d Cir.) ("A writ of habeas corpus must be directed to some person who has the power to produce before the court the body of the party detained."), cert. denied, 328 U.S. 873(1946). Therefore, even though the events about which Mr. Rosado-Sierra complains occurred beyond the jurisdictional reach of this court, it is only the custodian of the petitioner at the time he files his § 2241 who has authority to effect his presence in this court if a hearing were held. Wales v. Whitney, 114 U.S. 564, 574 (1885)(writ of habeas corpus does not act upon the prisoner who seeks relief, but upon the person who holds him in what is alleged to be unlawful custody). Thus, the matter is properly directed at petitioner's custodian, Warden T.R.Sniezek at F.C.I. Elkton, over whom this court has personal jurisdiction.

*Exhaustion*

It is only after a federal prisoner seeking § 2241 relief has sought and exhausted administrative remedies pursuant to 28 C.F.R. § 542.10 that he may seek § 2241 judicial review. United States v. Cobleigh, 75 F.3d 242, 251 (6th Cir.1996); United States v. Oglesby, No. 02-3143, 2002 WL 31770320 at *2 (6th Cir. Dec. 9, 2002) (citing United States v. Wilson, 503 U.S. 329, 335 (1992)). The exhaustion of administrative remedies procedure required of a § 2241 petitioner is not a statutory requirement, but instead, is a wholly judicially created requirement. See Wesley v. Lamanna, No. 01-3426, 2001 WL 1450759, at 3 (6th Cir. Oct. 30, 2001). It appears from the attachments that Mr. Rosado-Sierra has satisfied this burden.

7

*Challenge to Incident Report*

The substance of Mr. Rosado-Sierra's petition focuses on his contention that the BOP violated his right to due process when it acted in contravention of its own policy and failed to comply with his detention order pursuant to 18 U.S.C. § 3142.  He seeks to have the Incident Report expunged, "along with any or all sanctions imposed thereon, directly or indirectly." (Pet. at 5.)

The fundamental fairness guaranteed by the Due Process Clause does not require courts to set aside decisions of prison administrators that have some basis in fact, and administrative sanctions are not comparable to a criminal conviction. Wolff v. McDonnell, 418 U.S. 539, 556 (1974). Thus, neither the amount of evidence necessary to support such a conviction, see Jackson v. Virginia, 443 U.S. 307 (1979), nor any other standard greater than "some evidence" applies in this context. Superintendent, Mass. Corr. Inst. v. Hill, 472 U.S. 445, 456 (1985). Therefore, insofar as Mr. Rosado-Sierra argues that he should not have been charged with or sanctioned for engaging in or encouraging a group demonstration because he disagrees with the determination of the DHO, he has no claim.

First, Mr. Rosado-Sierra's claims regarding the respondent's reliance on a confidential informant or his status as a pre-trial detainee lack any support based on the facts alleged or relevant case law.  There is no statement in the Incident Report or attachments that suggests confidential informants were relied upon by the DHO.  In fact, the block beneath Section E., Part III.  "Presentation of Evidence" of the DHO Report indicates "N/A" regarding the use of confidential information.  Thus, there is no factual support to sustain his claim regarding confidential informants.

With regard to his status as a pre-trial detainee, there is no indication that the respondent trampled on his rights. After a party has been charged in an indictment, and the judicial officer is mandated to issue a detention order pending trial, the statute provides:

> In a detention order issued under subsection (e) of this section, the judicial officer shall--
>
> (1) include written findings of fact and a written statement of the reasons for the detention;
>
> (2) direct that the person be committed to the custody of the Attorney General for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal;

18 U.S.C. § 3142(i). There is no provision in the statute that entitles a pre-trial detainee to ignore the orders of the prison staff. If a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to "punishment." Bell v. Wolfish, 441 U.S. 520, 538-39 (1979). Moreover, petitioner has not articulated any facts that suggest or support an argument that the officer's request to clean the visiting room constituted 'punishment.' See Kennedy v. Mendoza-Martinez, 372 U.S. 144, 168 (1963); Flemming v. Nestor, 363 U.S. 603, 617 (1960)(if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to "punishment.") In view of these facts, the court will now turn to petitioner's challenge to the DHO's findings.

### *Denial of Due Process*

When a person is committed to pretrial detention he or she has not been adjudged guilty of any crime. He has had only a "judicial determination of probable cause as a prerequisite

to [the] extended restraint of [his] liberty following arrest." Gerstein v. Pugh,420 U.S. 103, 114 (1975); see Virginia v. Paul, 148 U.S. 107, 119 (1893). Furthermore, if he is detained for a suspected violation of a federal law, he also has had a bail hearing. See 18 U.S.C. §§ 3146, 3148. Under these circumstances, a party may be detained by the Government to ensure his presence at trial and he or she may be subjected to the restrictions and conditions of the detention facility as long as those conditions and restrictions do not amount to punishment, or otherwise violate the Constitution. Bell, 441 U.S. at 538.

With regard to claims of due process violations, a prisoner's liberty interests are implicated by disciplinary decisions that result "in an atypical and significant hardship ... in relation to the ordinary incidents of prison life" or that "lead to the loss of good time credit." Luna v. Pico, 356 F.3d 481, 487 & n. 3 (2d Cir.2004) (quoting Sandin v. Conner, 515 U.S. 472, 484 (1995)). While the loss of a prisoner's good time credits affords certain procedural safeguards, petitioner's incident report resulted only in the temporary loss of visiting privileges, which does not implicate a protected liberty interest.[4]

Even if a liberty interest were at stake, the DHO weighed the Incident Report, several eye witness accounts, petitioner's statements and found that petitioner encouraged the incident, and judged him guilty of the relevant infraction. Inasmuch as the DHO's decision is

---

[4]In an unreported case in the United States District Court for the Middle District of Pennsylvania, the petitioner was sanctioned with the loss of commissary, phone and visiting privileges for a period of thirty days. The court held that, notwithstanding his contention that this misconduct was fraudulently issued, the sanctions at issue did not constitute "an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Santos v. Bureau of Prisons, No. 1:05-CV-0008, 2006 WL 709509, at *2 (M.D.Pa. Mar. 20, 2006)(quoting Sandin, 515 U.S. at 483). Similarly, petitioner's temporary loss of visision would not implicate a due process violation.

supported by "some evidence" in the record, petitioner's claim fails on the merits. See Superintendent, Massachusetts Corr. Inst., 472 U.S. at 454.

Based on the foregoing, the petition is dismissed pursuant 28 U.S.C. § 2243. The court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.

IT IS SO ORDERED.


Dated: March 29, 2007            *s/     James S. Gwin*
                                 JAMES S. GWIN
                                 UNITED STATES DISTRICT JUDGE